Our second case this morning is Griselda Ontiveros v. Exxon Mobil. Ms. Abraham. Good morning. May it please the Court, my name is Christina Abraham and I represent the plaintiff appellant Griselda Ontiveros. The district court erred by granting summary judgment despite extensive circumstantial evidence of gender discrimination, age discrimination and retaliation viewed improperly in isolation rather than holistically as required under Ortiz. Under Reeves, a jury, not the court, must resolve credibility disputes and assess whether the employer's stated reason was pretext for unlawful discrimination. At this stage, the district court was obligated to disregard evidence favorable to the defendant that the jury is not required to believe. Courts must review the evidence in the light most favorable to the non-movement and refrain from weighing credibility. The court improperly required each piece of evidence to independently prove discriminatory intent instead of applying the holistic approach mandated by Ortiz. The court ignored key circumstantial evidence and comparator evidence and improperly credited defendant's narrative without allowing the jury to assess pretext. The court ignored this court's advisement under Sylvester that a case of discrimination can be made by assembling a number of pieces of evidence, none meaningful in itself, consistent with a proposition of statistical theory that a number of observations, each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction. The court erred in its gender discrimination analysis because it dismissed inappropriate behavior like staring, winking and inappropriate remarks as unrelated but these comments contributed to a bigger picture showing gender bias. It failed to consider the evidence holistically. It failed to consider evidence that the performance assessment process was itself predetermined and that the PIP offered to Ms. Ontiveros was just a formality. It failed to consider the testimony of a supervisor who admitted that no male employees were subject to the management of lower ranking performance or MLRP process, despite them also having performance issues. It credited Sanchez's claim that he received verbal complaints about Plaintiff that he never documented, there was no record of. It credited defendant's claim that Plaintiff was terminated because of her behavior at a performance review meeting, which events she disputes and the court acknowledged were disputed. Ms. Abraham, before you get any deeper into that evidence in the case, Exxon fired your client for her unprofessional behavior during the meeting on her performance improvement plan and then her failure to respond to their follow-ups after she stormed out of that meeting and otherwise behaved unprofessionally. And then when she didn't respond, the company terminated her. That's a non-discriminatory reason and there's no evidence that the company didn't genuinely believe that reason and was using it as a pretext for any form of discrimination, age or sex-related discrimination. And I haven't seen a satisfactory answer to that aspect of the case, regardless of how this winking, et cetera, can be interpreted. I do think that there is evidence that shows that their interpretation or their presentment of her behavior at that meeting. It doesn't really matter if there's a dispute about that. The question is whether the company genuinely believed that she had behaved unprofessionally. In other words, you need some evidence of pretext that it was cover-up for – it was a lie, it was a cover-up for their real reason, which was discrimination. And there isn't any record evidence showing that that reason was pretextual. I do think there is evidence that that reason was pretext, and I'll tell you why. First is the evidence that the whole thing was predetermined, that when they put her on the PIP, that it was for the purpose of terminating her. Because we have Sanchez and Viatoro on record saying that the PIP process was a formality to terminate an employee, and Sanchez saying that he couldn't really terminate people without putting them through that assessment process. And we have evidence in the record that shows the decision was made to terminate her back in January. But in addition to this, her version of events of what occurred at that meeting was disputed. Sanchez's and Maguire's relay of what happened could be interpreted by a jury to be exaggerated, because in addition to the pretext, the fact that the PIP was predetermined, we have evidence that Exxon tolerated a culture at this plant, especially, wherein people would yell, were emotional, would berate one another, there was cursing, and they tolerated all that. People didn't get fired for it. Moreover, they gave her 21 days to make a decision, and then Sanchez backtracked on that. That's inconsistency. So while a jury could believe possibly that their reasoning was honest, I think a reasonable inference could also be drawn that it wasn't, that it was exaggerated for the purpose of getting rid of her, that they saw this- Do we have anything suggesting that she was placed on the MLRP program because of her sex? Yes. So, going to the culture at the plant at the time that Sanchez became the plant manager. So, in 2019, females had made up only about 10% of the Cicero plants employee, and yet they were 100% of employees that were subject to the MLRP process. That is statistically improbable if the process was neutral. Sanchez and Villatoro admitted that no male employees were placed in MLRP that year, even though they acknowledged that they had problems with male employees' performance. There's a record, for example, that one of the male employees' work was called garbage. No male employees were subject, and Sanchez didn't fire anybody through that MLRP process. Villatoro and others described the PIP process as a formality. We have a witness, a former employee, Margaret Jaszorski, saying that she was told by another supervisor that when she was presented with a PIP, because she was part of that weeding out of women at the plant, that it was just a formality and that it was impossible for her to pass it. In other words, she wasn't going to keep her job if she decided to go on the PIP. And the reason for that was to pressure women to take the severance or pay in lieu options. So they would leave resigning instead of there being a record of them being fired. Does that answer your question? No, it doesn't, because I'm trying to drill down on what ties her placement on the MLRP to her sex discrimination or age discrimination claim. So with her placement on the MLRP, we have a number of bits of evidence that point to the gender discrimination. So in addition to the predetermined and the abuse of the PIP process— Let's see, the PIP process is once you're placed on the management—what is it? Management of lower relative performance. What I'm trying to connect up is your argument that once you were placed on this—so what is triggering women getting placed on MLRP? Yes, and thank you for asking that and for clarifying that. It's an important piece of the story. So the process starts with a preliminary assessment that local managers give to the employee. And that preliminary assessment, as we see from the record, is determinative or highly influential of the final outcome. Does that answer your question? Yes, and so what was her grade, her preliminary grade? For that year, it was a D. And then her final grade? A D. All right, and so it's a suggestion that she was given a D because of her sex. Correct, yes. And what evidence do we have of that? You said the culture? The culture. There's evidence, for example, about Sanchez making derogatory comments towards women, like he told plaintiffs that she should sit on his lap during a meeting. He made fun of the weight of another female employee. He made fun of another female supervisor's voice—that's Karen Hasberger. She was later removed from plant stewardship meetings without explanation, and she was also subject to the MLRP process. Both these female employees that I'm referring to had to leave the company because of the environment. These were not stray remarks under Ortiz. They're part of a broader context that show bias. And admittedly, this is not smoking-gun evidence that would make the intent easy to determine, but I think this court observed long ago that employers long ago taught their supervisory employees not to put discriminatory beliefs or attitudes into words, oral or written. So even if we accept that she's satisfied under McDouglass or Ortiz that she's established this prima facie case, if we move to the last element, now they've presented— if ExxonMobil comes and says, but this is the real reason that she was terminated, irrespective of the fact that she was now in the MLRP program, her behavior at this meeting, when we were going over the PIP, going over this, that that was pretextual. I think that's a reasonable inference that could be drawn, but it's not the only reasonable inference that could be drawn. And because you have multiple reasonable inferences that could be drawn from the evidence that's in a whole, that this should be resolved by a jury. Because I think a jury could also see that the process had been predetermined, that from January they'd made a decision that they were going to get rid of her, that Sanchez understood he needed to use that assessment process to do that. But do we have any at this—we have those prior, before they're put on the MLRP, but I'm wanting to kind of transition and move forward. In the history of this case, was there any comparators to people who had behaved in that manner at the PIP process? There's no— You know, that's where I'm trying to get you to. It's interesting because there's no men, I can point to, that were even put through that MLRP process and presented with this option. But what I can tell you is that if you look at Plaintiff Exhibit 13, you'll see the investigation report of Chris Halstead, and he does talk about men having performance issues. Their work was criticized at the plant. You just don't see a record of it because they were protected. Does that answer your question? So there were no men on the MLRP? No, not at this plant, not at the Cicero plant, not under Sanchez and Villatoro. And I think that's—like I said, it's statistically improbable when you're looking at the fact that 10% of the workforce was women and 90% were men, but 100% of the people who were faced with this MLRP were women, such that by the end of that process, the only person, the only female that was left at the plant was Nicole Salvaggio, who was hired outside the Exxon Standard process by Raul Sanchez, who was regarded as a younger, attractive female employee who was never yelled at and given more favorable treatment for that reason. I see I'm nearing my time. If there are any other questions, I'd be happy to answer them, but if not, I'll reserve the rest of my time to rebuttal. Thank you. That's fine. Ms. Wynne. Good morning. May it please the Court, my name is Amy Wynne, and I represent the defendant, Appellee ExxonMobil Corporation. Plaintiff's employment with Exxon ultimately terminated back in 2019 because she engaged in insubordinate, unprofessional behavior when she was told that Exxon had placed her in the lowest possible category in the performance assessment process, here that was a D, and that she would be put into the MLRP process, in which she had to choose whether to go on a performance improvement plan or stop actively working and receive salary and other benefits prior to resigning on a specified date, called that pay in lieu. When plaintiff was told of her D rating, she got up to leave before the meeting was over, threw the MLRP paperwork across the table, started yelling, and then refused to leave the facility when she was told. And due to that behavior, Exxon decided to remove plaintiff's option to go on the performance improvement plan. She could either take the pay in lieu or be terminated. After a holistic review of the evidence and giving plaintiff the benefit of all reasonable inferences, the district court properly decided that no reasonable juror could conclude that Exxon had assessed plaintiff's performance as a D or ultimately terminated her employment after removing the PIP option because of her gender or her age or in retaliation for her workplace complaints, and this court should affirm that decision. I'll start with plaintiff's gender claims first and then move on to her age and retaliation claims, noting that many of her failures of proof apply across all of her claims. So with respect to plaintiff's gender claim, the district court considered and addressed everything plaintiff put before it and correctly concluded that she did not establish a prima facie case under McDonnell Douglas and did not otherwise point to evidence from which a reasonable fact finder could conclude that gender was a factor in her 2019 performance assessment or her separation. With respect to her rating, she couldn't show she was meeting Exxon's legitimate performance expectations when she received the D or that the assessment process was somehow tainted by discrimination. As the district court correctly noted, the factual record reflected plaintiff's performance had been deteriorating over time. She went from Bs to a C to a D over a four-year period from 2016 to 2019, with the same kinds of performance issues year over year identified by two different supervisors and contemporaneously documented. She didn't identify any similarly situated men who were treated more favorably in the assessment process. To the contrary, plaintiff conceded that there was a man, Stephen Kimber, in her same assessment group in 2019 that also received a D and also was placed in the MLRP process. Instead, plaintiff generally focuses on male employees at the Cicero plant, even though they weren't part of her performance assessment group. It's not the proper assessment comparison group, and her gender claim fails for this additional reason. And despite plaintiff's conjectures in her brief, there is no evidence that plaintiff's D ranking or the PIP process was predetermined or tainted. That argument shouldn't even be considered by this court because plaintiff didn't make it below, but regardless, there's no evidentiary support for that claim given the uncontroverted facts of the record. With respect to the PIP option removal, she hasn't identified any evidence that her gender had anything to do with that decision to remove the PIP option after her insubordinate and disrespectful behavior or that she could even establish a prima facie case. Behavior like the plaintiff's behavior on the day she was told of her rating failed to meet legitimate performance expectations, nor did she identify any similarly situated man who engaged in similar misconduct and was treated more favorably. And with respect to her pretext argument, there's no evidence that Exxon did not honestly believe that plaintiff had engaged in that insubordinate behavior, nor is there any evidence that casts doubt on Exxon's stated reasons for removing the PIP option as a result. So just want to make sure there are men on the MLRP? There are men on the MLRP. Those men may be in different assessment groups, but yes, Stephen Kimber is an example of one who was placed in the MLRP from plaintiff's assessment group. From her assessment group? From her assessment group. Potentially might not have been working at the Cicero plant. Exactly. Got it. Exactly. While we're on the MLRP, let me ask a record question. Sure. So her 2019 performance review, there are two blank pages that we can see, and it's just a short statement that says MLRP issued and options clearly explained. Were those pages originally blank, and is there anywhere in the record explaining what exactly Villatoro cited to downgrade Ms. Ontiveros' performance rating to a D? Sure. Thank you for the question. So, yes, those 2019 performance assessment records are blank in their original form. They're not redacted or anything like that. And what is reflected, the documents that best reflect the series of issues that led to the D are the draft performance improvement plan document that's attached as part of the record in Mr. Villatoro's deposition. So you will see a draft performance improvement plan that was prepared that is reflective of all of the issues in a summarized way that reflect the D. And is that standard? So you put nothing in the performance review and put everything in this draft PIP that the employee may or may not agree to sign on to? That wasn't developed in the record, whether or not it was standard or not, but that's my understanding. Okay. Plaintiff's self-serving denials and the attempt to downplay the seriousness of her behavior at the performance assessment meeting does not create a genuine issue of material fact as to Exxon's legitimate business justifications for removing the PIP or with respect to pretext. The deposition testimony of the Exxon representatives who were present, Rola Sanchez, the plant manager, and Shannon McGuire from HR, recounted the behavior that day. There's contemporaneous documentation in the email correspondence reflecting plaintiff's behavior that day, and plaintiff herself doesn't dispute that she got upset, she walked out of the meeting before it was over, and she was told to leave the building. All of this supports ExxonMobil's honest belief that plaintiff engaged in insubordinate behavior that day, and the law is well settled that courts don't sit as super personnel departments to reevaluate that conclusion. And plaintiff has no evidence that ExxonMobil quote-unquote exaggerated her behavior like she now claims before this court in her brief. Plaintiff could have deposed others present in the office that day, but she didn't, and if all it took to survive summary judgment was for a terminated employee simply to say she didn't engage in the bad behavior that the employer honestly believes she did, despite a record of supporting evidence of that bad behavior, virtually every termination case would survive summary judgment. She has no evidence of pretext, and the district court's decision should be affirmed. Her various arguments about the alleged treatment of other female employees at the Cicero plant as evidence of discrimination against her were also considered improperly rejected by the district court. She assumes without any evidence that Sanchez, as the plant manager, was involved in assessments of everyone who worked at the Cicero plant. The record evidence shows that that was not the case and not how the assessment process worked. And furthermore, she doesn't have any evidence that there was anything discriminatory about the separation of other women from Cicero, most of whom were in different positions and involved different decision makers. In short, plaintiff's own speculations or her leaps of logic, as the district court called it, about other employees' separations are not enough for a reasonable fact finder to conclude that plaintiff's performance assessment or her separation was discriminatory. My friend's arguments about stray remarks and inappropriate comments by Sanchez don't save her claims either. To be clear, there's no sexual harassment claim in this case, but plaintiff wants this court to leap to the conclusion that the comments she alleges Sanchez made are evidence of gender discrimination against her. The district court didn't ignore this or assess credibility when reflecting on this evidence. It correctly concluded that even if the comments were made, they weren't evidence of gender discrimination because they were unrelated to any of the decisions at issue in this case. And in the absence of any evidence linking the decisions that plaintiff is challenging in her lawsuit today to her gender, her claims fail. And her age claims fare no better. There's no evidence concerning the decisions that she's challenging were due to her age. Her 2019 assessment, she can't show that, but for her age, she wouldn't have been assessed as a D. As I said before, the record evidence amply demonstrates her ongoing performance issues. Other younger employees she identified, Nicole Salvaggio, Salvatore Saucedo, they're not similarly situated comparators in all material. Was there either one of them in her assessment group? No. Plaintiff has no evidence that Salvaggio or Saucedo had performance issues like she did or engaged in subordinate or disrespectful behavior like the plaintiff did. That's what she needed to show, and she didn't. Instead, she claims without any evidence in the record that Salvaggio received preferential treatment from Sanchez in the hiring process. Salvaggio wasn't deposed in this case. And she claims another older employee was offered a PIP in the MLRP process when Saucedo was not in the MLRP. But there's nothing in the record that suggests that Exxon's decision had anything to do with age. It's pure speculation on her part, not evidence. Nor has she pointed to any evidence that but for her age, Exxon would not have removed her PIP option due to the insubordinate behavior or identified any other similarly situated comparator or other evidence to support that age was a factor in that decision. The plaintiff did not address at all retaliation claim in oral argument here, but I'll just touch on it briefly. She has not come forward with any evidence to support the retaliation claims that she makes in her brief. The record shows that neither of her two internal complaints involved age discrimination or harassment. Her first complaint was in October of 2018 about payment for overtime work. The second one was in November of 2018 about what plaintiff thought was Sanchez and Viatoro's harsh management styles. But nothing in the record reflects that she complained about sex or age discrimination or sexual... What about the November 2018 one where she's asked and she says she does not feel the treatment was motivated by gender alone, which indicates that she's saying gender was one of the things. It's just not the only thing. And then she talks about feeling targeted because she doesn't dress up for work. Why aren't those two things enough to say that she complained about gender discrimination? I don't think those two things are enough, given when you look at the totality of the things that she was complaining about and what she first reported at the end of the day. And in any event, even if that November 2018 complaint were legally protected activity, she still doesn't have any evidence from which a reasonable fact finder could conclude that had she not made that internal complaint, that she wouldn't have been assessed as a D and that she wouldn't have had the PIP option removed due to her insubordinate and unprofessional behavior. The evidence demonstrated that Viatoro was actively managing her performance well before the November 2018 complaint. He was raising issues with her about her performance. And when the same kind of performance feedback was being delivered both before and after the complaint, I think the retaliation theory just doesn't work. There's no evidence that the performance feedback, which was well-documented, was unjustified or pretextual, and no evidence that Viatoro treated anyone else who'd be supervised with similar performance issues more favorably. Were there any men on the MLRP under Villa-Torres or Sanchez's supervision? Not during this relevant period, but in past, but not at this particular time. Lastly, plaintiff hasn't pointed to any evidence suggesting that she would not have been terminated in September of 2019, but for her complaint 10 months earlier. The district court properly arrived at these same conclusions, properly applying the legal standards, and this court should affirm. In conclusion, plaintiff was required to come forward with evidence of discrimination on the basis of her gender and her age and evidence that she was retaliated against for making an internal complaint that was statutorily protected, and she failed to do that. Instead, she's only presented her unsupported speculations about the performance assessment process and her disagreement about whether her behavior was insubordinate, and that's not sufficient to defeat summary judgment. The district court got it right in this case, and that decision should be affirmed. If there are no further questions, we'll cede my time. Thank you. Thank you. Ms. Abraham. So a few points for rebuttal. The evidence of performance review manipulation includes, first, that Stephen Kimber did not work at the Cicero plant. I'm sorry, just a little bit louder. Oh, I'm sorry. Stephen Kimber did not work at the Cicero plant. He was not given a preliminary assessment rank by Villatoro or Sanchez. So what happens at the preliminary assessment, the local supervisors give you that rank. Then they go and they present on you for two minutes at a final assessment meeting, and that's where you see those final ranks entered. So the fact that Stephen Kimber from a different plant under different supervisors got a D is irrelevant to how Ms. Ontiveros got her D. It would not be irrelevant if what you described is the assessment group receives their final grade after the preliminary grade leaves the local plant. I would argue it's a rubber stamping process because they present on the employees for two minutes, and then there's no record and evidence that any employee leaves with a different rank than they came in with. They always get assessed at the same rank that they were preliminarily assigned. I would also say that there's evidence that Villatoro's demotion of her from a C to a D, even from 2018 to 2019, is evidence of retaliation because he may not have agreed that she merited the Bs that she was receiving before, but the substantive criticisms were the same. And those substantive criticisms didn't change from 2018 to 2019, but the grade does. And we also see a close temporal connection between her protected activity and the ramp-up in criticisms and the threats to terminate her. Villatoro and Sanchez were interviewed by HR pursuant to Ms. Ontiveros' complaint of machismo in December, and in January Villatoro threatens to terminate her for the first time. And we have testimony from Sanchez that acknowledges you can't just fire an employee, you have to take them through the assessment process. So right there the intent is related. Adverse actions that followed. And I also want to talk about the evidence that Exxon cites too in terms of what were her performance issues. Villatoro's, what they point to, a lot of them are not in fact performance issues. You see that Villatoro emails her because he's concerned about a potential issue, so he wanted to preempt it. Or there was an issue that occurred, but the fault occurred from somebody, I believe, at the warehouse. It wasn't Ms. Ontiveros' fault. And that actually, she testifies to that, and that's elaborated in the email record as well. And so with that I would say that there are genuine issues of fact as to how she was performing, how they were presenting her performance, and their intent to terminate her. Thank you for your time. Thank you very much. Our thanks to both counsel. We'll take the case under advisement.